IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM G. NELSON, IV, | ) | |
| | ) | |
| Plaintiff, | ) | No. 07 C 4825 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| DAVID K. WELCH and CRANE, HEYMAN, | ) | |
| SIMON, WELCH & CLAR, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this action, before this court on remand from the court of appeals, plaintiff William G. Nelson, IV, a former director and minority shareholder of Repository Technologies, Inc. "(RTI"), has sued RTI's former bankruptcy counsel, defendants David K. Welch and Crane, Heyman, Simon, Welch & Clar, alleging what purport to be state-law claims for conspiracy to help RTI's majority shareholders breach their fiduciary duties to RTI's shareholders and creditors, and tortious interference with contract. Defendants have moved to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the motion is granted.

**BACKGROUND**

This case is one of a number of lawsuits arising out of RTI's bankruptcy. As described by the Seventh Circuit, "the parties interested in these disputes and their lawyers have been on a litigation death march since April 2006." In re Repository Tech. Inc, , 601 F.3d 710, 713 (7th Cir. 2010). Hopefully (but not likely), that trek will end here. A full explanation of all the litigation surrounding and arising from RTI's bankruptcy is set forth in the Seventh Circuit

opinion (id. at 714-16), and is summarized here to explain the posture of the case as it comes to this court.

RTI marketed, supplied and maintained software. It was losing money between 2000 and 2004, at which time it became clear that its existing line of credit with its principal secured lender, West Suburban Bank, was insufficient to meet its business expenses. Plaintiff, a minority shareholder and member of RTI's Board, offered to finance RTI's operations. On August 30, 2002, RTI executed a revolving credit note with plaintiff providing for a maximum credit amount of $500,000. Plaintiff received a security interest in all of RTI's assets, which he subordinated to the Bank's security interest. On December 19, 2003, RTI's Board (without plaintiff's participation) authorized an increase in the credit line to $1.5 million. No new loan documents or security agreements were executed.

By May 28, 2004, plaintiff had advanced approximately $1.74 million to finance RTI's operations. At that time plaintiff stopped advancing money, but did suspend RTI's obligation to pay interest, telling RTI's president E. James Emerson that he did not expect to be repaid until RTI was "no longer in trouble." Eventually, however, plaintiff began to believe that RTI's controlling shareholders, Emerson and his wife, were overpaying themselves and their children, so he took steps to call in his debt. On April 4, 2006 (while still a member of RTI's Board), plaintiff paid off the $126,484 balance due on the Bank's loan, thereby elevating himself to RTI's sole secured creditor. He did not inform RTI of that maneuver. He then resigned as a director and sent Emerson a notice of default demanding RTI pay $509,687 in overdue interest to avoid an event of default.

Unable to pay, Emerson and RTI consulted with defendants, who prepared and on April 25, 2006 filed a petition for Chapter 11 reorganization. Plaintiff filed a proof of secured claim of $2.4 million. See 11 U.S.C. § 501(a). To effectuate its plan of reorganization, RTI filed an adversary action against plaintiff, seeking to re-characterize plaintiff's debt as equity and then to subject plaintiff's interest in RTI to equitable subordination. 11 U.S.C. § 510(c)(1).

The bankruptcy court concluded that there were disputed issues of fact, combined the adversary and bankruptcy actions, and conducted a trial. On February 13, 2007, the bankruptcy court entered judgment in the adversary action, re-characterizing $240,000 of plaintiff's debt as equity but completely denying RTI's claim for equitable subordination, leaving plaintiff with a secured claim of approximately $1.8 million.

Having been unable to obtain full re-characterization and equitable subordination, RTI conceded that it could not offer a confirmable plan for Chapter 11 reorganization. The bankruptcy court then entered an order dismissing the bankruptcy case. That order, and the adversary judgment, referred to the court's findings of fact and conclusions of law in which the court rejected plaintiff's alternate motion to dismiss the bankruptcy case as having been filed in bad faith. Specifically, the bankruptcy court concluded that the "filing of this bankruptcy was a rational reaction to [plaintiff's] actions, and was partially successful. Therefore, the bankruptcy cannot be held to be in bad faith." In re Repository Technologies Inc., 363 B.R. 868, 816 (Bkrtcy. N.D. Ill. 2007).

That same day, immediately after the bankruptcy was dismissed, plaintiff sued RTI in federal district court seeking damages for RTI's breach of the loan agreement. The following day, Judge Coar, to whom that case was assigned, granted plaintiff's motion for a temporary

3

restraining order freezing all of RTI's assets. Just prior to the freeze, however, RTI had paid the instant defendants $100,000 as fees for representing RTI in the bankruptcy. The district court appointed a receiver to operate RTI's business to protect plaintiff's interests in the RTI assets. On March 20, 2007, plaintiff conducted a Uniform Commercial Code ("U.C.C.") sale of RTI's assets to himself for $475,00, and all RTI's assets were transferred to plaintiff. On June 7, 2007, the court approved the receiver's final report on the sale and liquidation, and plaintiff dropped his remaining claims.

During this time frame plaintiff also appealed the bankruptcy court's judgment in the adversary proceeding to the district court. On January 15, 2008, Judge St. Eve, to whom that appeal had been assigned, affirmed all of the bankruptcy court's factual findings and legal conclusions. In re Repository Tech. Inc., 381 B.R. 852 (N.D. Ill. 2008). Judge St. Eve also denied plaintiff's motion to strike as dictum the bankruptcy court's finding that RTI had not filed the bankruptcy in bad faith.

On July 11, 2007, plaintiff filed the instant complaint in the Circuit Court of Cook County, Illinois, alleging that defendants: (1) conspired with the Emersons to use the RTI Chapter 11 case to enrich themselves; (2) tortuously interfered with plaintiff's loan contract with RTI; and (3) abused the bankruptcy process.[1] Defendants removed the case to the district court and it was assigned to Judge Kocoras. Plaintiff promptly dropped his abuse of bankruptcy process claim and sought remand to the state court. Judge Kocoras denied that motion, concluding that the court had "arising in" jurisdiction under 28 U.S.C. § 1334(b) because the

---

[1] Plaintiff has also brought similar claims against the Emersons in Delaware state court.

4

remaining claims all revolved around plaintiff's assertion that defendants engaged in abuse of the bankruptcy process.

While the instant case was pending before Judge Kocoras, Judge St. Eve affirmed the judgment in the adversary proceeding. On February 8, 2008, Judge Kocoras concluded that Judge St. Eve's decision affirming the bankruptcy court's finding that RTI had not filed the Chapter 11 petition in bad faith, precluded plaintiff's abuse of the bankruptcy process claim and dismissed that claim with prejudice. Defendants then moved to dismiss the remaining claims arguing that Judge Kocoras had already held that the entire complaint was based on the abuse of bankruptcy process allegations. Judge Kocoras concluded that plaintiff's state-law claims stemmed "from events that happened outside the bankruptcy context" and declined to exercise supplemental jurisdiction over those claims under 28 U.S.C. § 1367(c)(3), and remanded those claims to the state court.

Defendants appealed Judge Kocoras' decision not to exercise supplemental jurisdiction over the state law claims, arguing that because the district court's dismissal of the abuse of the bankruptcy process claim was dispositive of the state-law claims, Judge Kocoras should have retained supplemental jurisdiction and dismissed those claims as well. Plaintiff did not appeal the dismissal of the abuse of the bankruptcy process claim. He did, however, appeal Judge St. Eve's affirmance of the bankruptcy court's decision in the adversary action, arguing that the bankruptcy court erred in partially re-characterizing his loans as equity and requesting that the court of appeals strike as dictum the bankruptcy court's finding that RTI did not file in bad faith. RTI cross-appealed, arguing that the bankruptcy court should have re-characterized all of plaintiff's loans and then equitably subordinated plaintiff's interest in RTI.

The two cases were consolidated on appeal, and on April 12, 2010, the court of appeals issued its comprehensive opinion. In re Repository Tech. Inc., 601 F.3d 710. With respect to the cross appeals from Judge St. Eve's affirmance of the adversary action, the court concluded that "the sale of RTI's business assets following the dismissal of the bankruptcy proceeding mooted any actual controversy in this case." Id. at 717. "[N]ow that RTI has lost all of its assets at [plaintiff's] U.C.C. sale, it cannot effectuate a reorganization plan regardless of how much (if any) of [plaintiff's] debt the bankruptcy court should have re-characterized; RTI no longer has any business to reorganize. Since the re-characterization issue was so intertwined with RTI's Chapter 11 reorganization, the impossibility of reorganization following the sale of RTI's assets moots this case." Id.

The court of appeals, however, agreed with plaintiff that the bankruptcy court's statement about RTI's good faith was dictum because the language was not essential to the outcome of dismissing RTI's bankruptcy case. Id. at 718. The court's discussion of the whole "dictum" issue is curious because it noted that "[plaintiff's] challenge to the bankruptcy court's dictum does not create a justiciable controversy because `dicta are not appealable rulings.'" Id. (quoting Chathas v. Local 134 IBEW, 233 F.3d 508, 512 (7th Cir. 2000)). Because the re-characterization and equitable subordination issues that were essential to the bankruptcy court's judgment were moot, "[plaintiff's] complaint about the court's good faith dictum does not establish federal jurisdiction." The court then vacated Judge St. Eve's judgment in the adversary proceeding and remanded with instructions to dismiss the appeal from the bankruptcy court as moot. Id. at 718-19.

With respect to the instant case, the court of appeals first agreed with Judge Kocoras' conclusion that because plaintiff's entire lawsuit is predicated on defendants' participation in RTI's bankruptcy proceeding, the district court had original "arising in" jurisdiction over plaintiff's abuse of the bankruptcy process claim. Id. at 720-21. After determining that there was no independent ground for subject matter jurisdiction over the asserted state-law claims, the court then reviewed Judge Kocoras' decision to decline to exercise supplemental jurisdiction over the state claims, concluding that "all of the allegations supporting [plaintiff's] civil conspiracy and tortious interference claims are predicated on the defendant's participation in RTI's bankruptcy case. Because these state-law claims are so entangled with [plaintiff's] federal abuse of bankruptcy process claim, the district court should have retained supplemental jurisdiction over the entire lawsuit." Id. at 727.

The court of appeals recognized that the entanglement between the state and federal claims would suggest that the state claims should be dismissed based on Judge Kocoras' dismissal of the federal claim. Because Judge Kocoras' decision was based on the preclusive effect of Judge St. Eve's affirmance of the bankruptcy court's good faith finding, which the Seventh Circuit determined was dictum and should not have been relied on, it has remanded the state claims to this court to be resolved "without regard to this dictum." Id. at 728.

## DISCUSSION

Defendants have moved under Fed. R. Civ. P. 12(b)(6) to dismiss the remaining state law claims for failure to state a claim upon which relief may be granted. The purpose of such a motion is to test the sufficiency of the complaint, not to rule on its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). The complaint must describe the claim in

sufficient detail to give defendant fair notice of what the claim is and the grounds on which it rests. The allegations must plausibly suggest that plaintiff has a right to relief, raising the possibility above the "speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). The plaintiff must give enough details about the subject-matter of the case to present a story that holds together. The court then asks "itself could these things have happened, not did they happen. Swanson v. Citibank N.A., 614 F,.3d 400, 404 (7th Cir. 2010) (emphasis in original).

Count I asserts a claims for civil conspiracy to commit a breach of fiduciary duty.[2] As described by the Seventh Circuit, Count I alleges "that the Emersons, `acting in concert' with [defendants], breached their fiduciary duties as RTI's directors by filing a Chapter 11 case that they knew would diminish RTI's value." In re Repository Tech. Inc., 601 F.3d at 725.

Count II asserts a claim for a conspiracy to tortiously interfere with plaintiff's loan contracts with RTI. As described by the Seventh Circuit, "that count . . . relies on the allegation that defendants entered into the `heretofore alleged' civil conspiracy to achieve the `unlawful goal of inducing RTI to breach its loan contract with [plaintiff].' But as we have discussed, the alleged civil conspiracy depends on acts associated with preparing and litigating RTI's bankruptcy case. Again, this claim is inextricably bound to [plaintiff's] claim that [defendants] abused the bankruptcy process." Id. at 736.

As is readily apparent, both counts are predicated on the allegation that the bankruptcy was improper, or a bad faith filing. Plaintiff argues in vain that the complaint alleges pre- and

---

[2]In his memorandum plaintiff asserts that Count I is actually a claim for a civil conspiracy to commit "transfers fraudulent in law," a phrase that the court has searched for but found no- where in the complaint.

8

post- petition conduct by defendants that support the two claims, but the Seventh Circuit specifically rejected this argument. "Our review of the complaint indicates that even those allegations describing conduct that occurred outside the official time frame of RTI's bankruptcy case are predicated on the defendants' role as bankruptcy counsel." Id. "All the allegations supporting [plaintiff's] civil conspiracy and tortious interference claims are predicated on the defendants' participation and RTI's bankruptcy case." Id. at 727. "We . . . are unable to discern from [plaintiff's] complaint any theories of liability that do not rely on RTI's allegedly improper bankruptcy filing." Id.

Thus, the two counts state viable claims only if the allegation that defendants abused the bankruptcy process by filing the RTI bankruptcy petition is plausible. It is not. There are two major impediments to a conclusion that the abuse of bankruptcy process allegation is plausible. The first is Judge Kocoras' dismissal with prejudice of the abuse of bankruptcy process claim. It is true that Judge Kocoras' conclusion was predicated on the preclusive effect of Judge St. Eve's now vacated affirmance of the bankruptcy court, which would normally suggest that Judge Kocoras' dismissal should also be vacated. See U.S. Philips Corp. v. Sears Roebuck & Co., 1992 WL 296361 (N.D. Ill. 1992) (a second judgment based upon the preclusive effects of the first judgment should not stand if the first judgment is reversed). The Seventh Circuit did not vacate the dismissal, however (plaintiff did not file a cross-appeal), and plaintiff has not asked this court to vacate the dismissal on remand. Nonetheless, the dismissal was ultimately based on the bankruptcy court's dictum of a good faith filing, which the Seventh Circuit has instructed this court to ignore when assessing plaintiff's claims. Consequently, for purposes of the instant motion, the court assumes that plaintiff can overcome this initial hurdle.

The second hurdle, however, cannot be overcome. While this court cannot rely on the bankruptcy court's "finding" of good faith, it cannot ignore the underlying facts that supported that finding.[3] First and foremost among those facts is that RTI was partially successful in the adversary action, achieving re-characterization of $240,000 of plaintiff's debt as equity. While the amount of re-characterization was insufficient to support a confirmable plan, the partial victory demonstrates that the adversary action was not "based on utterly frivolous claims" as alleged by plaintiff. As plaintiff acknowledges, RTI's ability to reorganize was premised on obtaining relief in the adversary case. Because the adversary case was not frivolous, there is no doubt that the bankruptcy petition was not filed in bad faith. Therefore, plaintiff cannot prevail on either state-law claim. Defendant's motion to dismiss is granted.

## CONCLUSION

For the reasons explained above, defendant's motion to dismiss the first amended complaint (Doc. 62) is granted.

**ENTER:** October 12, 2010

_____
**Robert W. Gettleman
United States District Judge**

---

[3] It is understandable that the bankruptcy court ruled on plaintiff's motion to dismiss the bankruptcy on bad faith grounds despite granting the motion to dismiss because no plan was confirmable. A dismissal based on bad faith carries additional consequences, including the potential for dismissal with prejudice. See In re Hall, 304 F.3d 743, 746 (7th Cir. 2002).